THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RAMÓN IBALDI-VALDEZ,**

**Petitioner,**

**v.**

**GARRET J. RIPA, et al.,**

**Respondents.**

**Civil No. 26-1046 (ADC)**

**OPINION AND ORDER**

## I. Introduction

Before the Court is a motion for reconsideration filed by petitioner Ramón Ibaldi-Valdez ("Mr. Ibaldi" or "petitioner") on February 5, 2026. **ECF No. 19**. Petitioner seeks to set aside the Court's judgment entered on February 3, 2026, whereby it accepted his request to voluntary dismiss without prejudice the petition for writ of habeas corpus at the center of this case. *See* **ECF Nos. 1, 18**. The respondents[1] (who will be collectively referred as the "government") oppose setting aside the judgment because it claims, among other things, that the Court no longer has jurisdiction over the habeas petition. **ECF No. 21**.

For the reasons explained below, the Court **DENIES** the motion for reconsideration.

[1] The respondents named in the petition are Garrett J. Ripa, Miami Field Office Director, Enforcement and Removal Operations (ICE/ERO); Todd Lyons, Acting Director U.S. Immigrations Customs Enforcement; Kristi Noem, Secretary of Homeland Security; and Pamela Bondi, Attorney General of the United States of America. **ECF No. 1**. By operation of Fed. R. Civ. P. 25(d), former Secretary Noem is substituted by current Secretary Markwayne Mullin, and former Attorney General Bondi by Acting Attorney General Todd Blanche.

## II. Factual and Procedural Background

The procedural journey of this case is brief but worth delineating in full. Mr. Ibaldi is a citizen and national of the Dominican Republic and has lived in Puerto Rico since he entered the United States without inspection or parole on or about January 1, 2016. **ECF No. 1** at ¶¶ 1, at 5, ¶ 22. He is married to a lawful permanent resident who filed a petition for alien relative with the United States Citizenship and Immigration Services ("USCIS") on February 12, 2021, which was approved on October 3, 2022. *Id.*, at 6, ¶ 19. He has no criminal history, and claimed to pose no danger to the community or to be flight risk. *Id.*, at ¶ 5.

Mr. Ibaldi was arrested and detained by Immigration and Customs Enforcement ("ICE") on January 23, 2026. *Id.*, at 6, ¶ 20. He was being held in an ICE detention facility in Guaynabo, Puerto Rico, when, on January 27, 2026, he filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the conditions of his detention. *Id.* That same day, he filed a motion in this Court requesting that it enjoin the government from removing him from Puerto Rico while his petition remained pending. **ECF No. 3, 4**. The Court granted the request and issued a temporary restraining order barring the government "from transporting or transferring [petitioner] out of the jurisdiction of the District of Puerto Rico," while also ordering prompt briefing on the habeas petition and setting a hearing for February 4, 2026. *See* **ECF No. 7** at 5.

Mr. Ibaldi's claim was that he was being held in the government's custody illegally without bond pursuant to an erroneous legal interpretation of Sections 235 and 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b), 1226(a). **ECF No. 1** at 3, ¶ 9. He

alleged that the government considered him subject to mandatory detention without the possibility of being released on bond under Section 235. *Id.*; *see also id.*, at 6, ¶ 21 n. 1 (citing 8 U.S.C. § 1225(b)). Mr. Ibaldi argued that this was wrong as a matter of law because he was instead subject to discretionary detention under Section 1226 and was thus entitled to a "custody redetermination" hearing before an immigration judge, where he could request release on bond. *Id.*, at 6, ¶ 21 n.1 (citing 8 U.S.C. § 1226(a)). He sought the issuance of a writ of habeas corpus ordering his release, a declaration that his detention violated the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V, and that the Court award costs, attorney's fees, and any further relief it deemed just and proper. *Id.*, at 10, ¶¶ 4-7.

On January 29, 2026, Mr. Ibaldi filed an informative motion notifying the Court that a hearing on his bond request had been held and that it had been approved by an immigration judge. **ECF No. 11**. In his ruling, the immigration judge concluded that he was bound by the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220-28 (BIA 2025) and its interpretation of Sections 235 and 236 of the INA, under which he had no jurisdiction to hold the hearing and release petitioner on bond. **ECF No. 11-1** at 3. However, as an "alternative holding" and in recognition that previous habeas petitions in this District have consistently ordered immigration judges to hold bond hearings regardless, he granted Mr. Ibaldi release on bond under 8 U.S.C. § 1226(a), finding that he did not pose a danger to the community or present a flight risk. *Id.*, at 3-5. Mr. Ibaldi, preempting any mootness argument the government may have raised as a result of this outcome, asked the Court to maintain

jurisdiction over his case because the government had reserved its right to seek review of the immigration judge's decision. **ECF No. 11** at 1-2, ¶¶ 2-3. That reservation, according to Mr. Ibaldi, purportedly operated as an automatic stay of the immigration judge's decision. *Id.*, at 2, ¶ 4 (citing 8 C.F.R. 1003.19(i)(2)). In Mr. Ibaldi's own words, he argued that the Court should keep the case alive to ensure that, "if it determine[d] that mandatory detention of [petitioner] under 8 U.S.C. § 1225 is illegal, its orders are observed." *Id.*, at 5, ¶ 16.

On February 2, 2026, the government filed a motion to clarify the status of Mr. Ibaldi's immigration case. **ECF No. 12**. There, it stated that the government's mere reservation of appellate rights did not affect Mr. Ibaldi's ability to post bond and that he in fact had been able to do so that day, pursuant to which he would be released. *Id.* The government also filed its memorandum in opposition to the habeas petition. **ECF No. 13**. It first argued that the Court lacked subject-matter jurisdiction over the petition pursuant to several provisions of the INA that purportedly barred judicial review of Mr. Ibaldi's claims. *See id.*, at 15-18 (citing 8 U.S.C. § 1252(b)(9), (e)(3), and (g)). The government also argued that Mr. Ibaldi had failed to exhaust administrative remedies because he did not reserve his right to appeal the immigration judge's initial determination that he lacked jurisdiction to grant release on bond. *Id.*, at 32-33. Next, the government argued that petitioner's due process arguments failed in the context of removal proceedings. *Id.*, at 18-19. As to petitioner's detention status under Section 235(b)(2), the government explained its position, consistent with *Matter of Yajure Hurtado*, that all noncitizens present in the United States without admission and pending removal proceedings are subject to

mandatory detention—an interpretation that hinges are such persons "applicants seeking admission" under the relevant statutory text. *Id.*, at 19-32. Finally, the government opposed the request for costs and attorney's fees, *id.*, at 33-36, and argued that the only proper respondent was petitioner's immediate custodian, Garrett J. Ripa, the Enforcement and Removal Operations (ICE/ERO) Field Office Director (FOD) for the Miami Field Office, *id.*, at 36-37.

In the late hours of that same day, Mr. Ibaldi filed a motion confirming that he had indeed been released on bond pursuant to the immigration judge's order. **ECF No. 15**. As a result, he "underst[ood] that the remedy (freedom from mandatory detention) he requested . . . was obtained." *Id.*, at 2. He asked the Court to close the case on mootness grounds. *Id.* The Court took note of the informative motion the next day, construing it as a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(2), and entered judgment dismissing the petition without prejudice. **ECF Nos. 17, 18**. The Court purposefully made no pronouncement as to whether the petition for habeas had become moot or not.

Only two days later, on February 5,2026, Mr. Ibaldi returned to court and filed an emergency motion for reconsideration, urging the Court to reopen the matter and rule on his habeas petition because the immigration judge, acting on a motion by the government, had just reconsidered his own order and revoked his release on bond. **ECF No. 19**. According to documents submitted by Mr. Ibaldi, the day after the Court entered Judgment dismissing the habeas petition without prejudice, the government filed a motion for reconsideration of the bond order in the immigration case. **ECF No. 19-1**. The immigration judge granted the motion

the very same day without waiting for a response from the petitioner, setting aside his "alternative holding" granting release on bond and reaffirming his principal holding that he lacked jurisdiction to grant relief. **ECF No. 19-2**. Accordingly, Mr. Ibaldi's bond was revoked.

What followed was a hearing, held on February 6, 2026, where the parties and the Court discussed Mr. Ibaldi's request to set aside the judgment and reopen the case. *See* **ECF No. 20**. In that hearing, counsel for Mr. Ibaldi explained that he had not then been re-detained and that he remained under electronic monitoring. *Id.* Counsel argued that the petition was evidently not moot given the revocation of the bond. *Id.* The government, on the other hand, argued that the petition was moot because, at the time judgment was entered, Mr. Ibaldi had obtained the remedy he had sought through the petition. *Id.* Moreover, the government maintained that petitioner was not in custody for habeas purposes, and therefore the Court lacked jurisdiction to reopen the case. *Id.* At the end of the hearing, the Court ordered the parties to file supplemental briefs on the jurisdictional issues, the availability of alternative relief, and on any other argument relevant to the merits of the habeas petition. *Id.*

By February 9, 2026, both parties had dutifully complied. *See* **ECF Nos. 21, 22**. Mr. Ibaldi reaffirmed his legal theory: that he was detained under Section 236(a), not Section 235(b), and had a right to a bond hearing. **ECF No. 22** at 3-7. Mr. Ibaldi also argued that, even though he was not physically detained at the time, he was still entitled to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *Id.*, at 7-9. Further, he briefly stated his position as to the government's prior arguments in opposition to his habeas petition. *Id.*, at 9-11. For its

part, the government argued that the case had become moot given that there was no longer any live controversy due to petitioner no longer being in custody. **ECF No. 21** at 2-3. In its words:

> Any possibility that Petitioner may again be detained depends on future contingencies. The fact that Petitioner could theoretically be re-detained in the future does not defeat mootness. The Supreme Court has held that speculative future injury is insufficient to maintain Article III jurisdiction. . . . Petitioner's release is effective as of today, and any future detention would arise from a new circumstance and would need to be challenged, if needed, in a separate proceeding.

*Id.*, at 3. As to the availability of declaratory relief, the government reiterated its lack of standing argument in the declaratory context, alleged that petitioner had not requested declaratory relief in his petition, that it would be improper for the Court to grant it *sua sponte*, and that the immigration judge's ruling did not create an imminent injury given that a new warrant would still have to be issued to detain him. *Id.*, at 3-5.[2] Lastly, the government pointed the Court's attention to the Fifth Circuit's decision in *Buenrostro-Méndez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), where that court adopted the government's statutory interpretation of detention under Section 235(b). *Id.*, at 6.

From the date of those filings up to the month of May 2026, the Court had not been updated on Mr. Ibaldi's removal proceedings or on his custodial status.[3] On May 20, 2026, the

---

[2] The government also included a block quotation from *Vertex Tower Assets, LLC v. Town of Wakefield, New Hampshire*, 771 F. Supp. 3d 80, 91 (D.N.H. 2025), in apparent regard to the redressability prong of the standing inquiry. **ECF No. 21** at 5. However, it is not clear whether the government meant to make an argument as to that prong because the quotation stands alone without development.

[3] Except that, on February 20, 2026, petitioner filed an informative motion regarding a somewhat relevant class certification decision issued by a federal district court in the Central District of California, which the Court noted. **ECF No. 23, 25**.

Court ordered Mr. Ibaldi to inform the following: "(1) the status of the immigration proceedings against him; (2) whether, after his bond was revoked, he has been re-detained by respondents; (3) if he has not been re-detained[,] . . . the exact details of his conditions for release on bond." **ECF No. 26**. Mr. Ibaldi complied, informing the Court that he had not been re-detained, had been granted pre-conclusion voluntary departure in lieu of removal by which he must depart the United States no later than August 20, 2026, and that he remained "under the same conditions of release previously in effect." **ECF No. 27**. The Court noted these developments and noted that these "previous conditions" had included electronic monitoring, and further ordered him to inform, "in no ambiguous terms, whether he remains under electronic monitoring or not, and if so, to describe the conditions of such monitoring." **ECF No. 28**. Mr. Ibaldi again complied and confirmed that he remains subject to electronic monitoring and is prohibited from travelling outside the United States, conditions which represent an "ongoing restraint on his liberty, and therefore custody for purposes of 28 U.S.C. § 2241." **ECF No. 29** (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)).

## III. Discussion

First and foremost, the Court must determine whether it has subject-matter jurisdiction over petitioner's claims. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988); *Gore & Assocs. Mgmt. Co., Inc. v. SLSCO Ltd.*, 157 F.4th 83 (1st Cir. 2025), *cert. denied sub nom. Gore & Assocs. Mgmt. v. SLSCO Ltd.*, No. 25-934, 2026 WL

1377054 (U.S. May 18, 2026). This means that the Court must first address whether petitioner's release on a now-revoked bond and his subsequent acceptance of voluntary departure in lieu of removal has mooted his claims.

The mootness doctrine, which stems from Article III's "Cases" or "Controversies" requirement, "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). Mootness implies that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022) (citation modified)). In simple terms, "[s]ometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024).

Petitioner was released on bond from detention on February 2, 2026. Although the immigration judge revoked his bond just two days later, six months have passed without the government moving to re-detain petitioner, and his removal proceedings were suspended on May 21, 2026, by the grant of pre-conclusion voluntary departure under INA Section 240(B)(a), 8 U.S.C. § 1229c(a), and 8 C.F.R. § 1240.26(b). *See* **ECF No. 27-1**. This remedy effectively withholds the issuance of a final order of removal and makes the same contingent on petitioner's

failure to voluntarily depart from the United States by August 20, 2026. *Id.*, at 3.[4] In granting this relief, the immigration judge did not require petitioner to post bond and only imposed the condition that he provide the Department of Homeland Security with his passport or other travel documents to assure lawful entry into the country to which he is departing. *Id.*[5] The relief petitioner seeks in his petition—for the Court to declare that he is being detained under 8 U.S.C. § 1226(a) and to order the immigration judge to reinstate his bond—makes little sense at this juncture. Petitioner is no longer being detained in the sense of 8 U.S.C. §§ 1225(b) or 1226(a). Affording petitioner his requested relief would not resolve any active dispute and would amount to, at best, a symbolic victory. However, the Court is not in the business of deciding stale controversies. *See Grant v. Trial Ct. of Massachusetts*, No. 25-1555, 2026 WL 2137658, at *3 (1st Cir. July 24, 2026) (". . . would the relief sought, if granted, make a difference to the parties' legal interests? If the answer is no (the relief wouldn't make a difference), that means we aren't deciding a live case or controversy, so we're exceeding our constitutional mandate if we do anything other than dismiss the [case]." (internal citations omitted)).

---

[4] "When the government extends this option [i.e., voluntary departure], it effectively makes detention and removal contingent: Officials may detain and remove the individual only if he remains in the country after his voluntary-departure period has expired." *Monsalvo v. Bondi*, 604 U.S. 712, 715 (2025).

[5] It is unclear under what authority petitioner is being subjected to electronic monitoring, as none of the immigration judge's orders on record include this condition. *See* **ECF Nos. 11-1, 19-2, 27-1.** It is possible that petitioner is subject to an "alternative to detention" program run by ICE, but after having asked petitioner twice to inform on the details of his conditions of release, **ECF Nos. 26, 28**, he provided only frustratingly vague responses, **ECF Nos. 27, 29**. In any event, petitioner does not challenge the conditions themselves or the government's authority to impose conditions during his voluntary departure period. *Cf. Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68-70 (D. Mass. 2025) (expounding on nature of ICE's authority to impose conditions of release).

For this reason, the Court is satisfied that the dispute is no longer a live one and that any relief it could afford would be ineffectual, rendering the case moot. Accordingly, the Court has no need to address the government's argument that several provisions of the INA divest the Court from jurisdiction over the petition. **ECF No. 13** at 15-18.[6] The Court also need not address whether Mr. Ibaldi's electronic monitoring and prohibition on international travel suffice for him to be "in custody" for purposes of the habeas statue. **ECF No. 29** at 2.[7] And the Court can dispense with any analysis on the propriety of affording relief under the established Fed. R. Civ. P. 59(e) standard.[8] All said and done, this Court's limited role in Mr. Ibaldi's immigration saga is concluded, and hopefully for good.[9]

---

[6] Nonetheless, this Court recently rejected the same arguments in a similar case. *See* Memorandum and Order, *Maria v. Ripa*, et al., 26-CV-1172 (ADC) (D.P.R. Apr. 20, 2026), at ECF No. 37.

[7] The Court's research found support for finding that the "in custody" requirement of 28 U.S.C. § 2241 is met when electronic monitoring and travel restrictions, among other conditions short of physical detention, are imposed on a noncitizen released on bail from immigration detention. *See, e.g., Ali v. Napolitano*, No. CIV.A. 12-11384-FDS, 2013 WL 3929788 (D. Mass. July 26, 2013); *López López v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598 (D. Mass. Jan. 26, 2020); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61 (D. Mass. 2025).

[8] "[A] motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but [of] apprehension.'" *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008) (quoting *Sandoval-Díaz v. Sandoval-Orozco*, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005)). Moreover, a motion for reconsideration must "either clearly establish a manifest error of law or . . . present newly discovered evidence." *Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15 (1st Cir. 2006). "[T]he district court has substantial discretion and broad authority to grant or deny such a motion." *Ruiz Rivera*, 521 F.3d at 81 (quoting *United States v. 5 Bell Rock Rd.*, 896 F.2d 605, 611 (1st Cir. 1990)).

[9] The Court trusts that Mr. Ibaldi will obey his voluntary departure conditions and that the government will allow him to do so. *Cf. Torres Gomez v. Soto,* No. 26-CV-7181 (MEF), 2026 WL 2117633 (D.N.J. July 22, 2026) (granting habeas relief to noncitizen subject to voluntary departure order on due process grounds when the government impeded his departure by keeping him in custody).

## IV. Conclusion

For the reasons stated above, the Court **DENIES** petitioner's motion at **ECF No. 19** to reconsider the entry of Judgment. Petitioner's motion in compliance (**ECF No. 29**) with the Court's May 26, 2026 Order is **NOTED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of August 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**